### FELTON et al. v. DAVENPORT et al.
#### No. 3996.

Court of Civil Appeals of Texas. El Paso.
Jan. 30, 1941.

Rehearing Denied Feb. 20, 1941.

989

Minor W. Pitts, Jr., of Corpus Christi, H. C. Vinson, of San Angelo, Ruth Felton and Chas. E. Rattan, both of Dallas, and T. H. Miller, of George West, for plaintiffs in error.

W. S. Ethridge, of Bandera, and Tynan, Davis & Scherlen, of San Antonio, for defendants in error.

SUTTON, Justice.

This cause is here for review on writ of error from the District Court of Live Oak County. The suit was brought and tried on the third amended original petition of James M. Davenport and George Davenport, individually and as executors and sole devisees of W. L. Davenport, to recover on certain vendor's lien notes against D. W. Snyder, and to foreclose the vendor's lien on certain lands described in their petition, situated in Live Oak County, against D. W. Snyder, A. J. Felton, the Great Southern Life Insurance Company, W. F. Felton, individually and as administrator of the estate of A. J. Felton, deceased, and Clifford Mays, administrator of the estate of A. J. Felton, deceased, L. E. Mounger, J. A. Mounger, J. B. Sneed, and Charles E. Rattan.

The parties will here be referred to as in the trial court.

The trial was before a jury, and, on the findings of the jury and determination of the law by the court, judgment was rendered for the plaintiffs on the notes against Snyder, · and a foreclosure decreed as against all of the other defendants named, except the Great Southern Life Insurance Company, who disclaimed. From that judgment the Feltons, Moungers and Charles E. Rattan, as plaintiffs in error, have prosecuted this appeal.

The pleadings are very lengthy and somewhat involved, but we will make a sufficient reference to them in the opinion for an understanding of them as applicable to the issues raised.

By deed duly recorded W. L. Davenport, J. M. Davenport, G. H. Davenport and Iona Davenport, conveyed to D. W. Snyder some three thousand acres of land in Live Oak County for a consideration of $28,200; $2,500 cash, one note for $5,000, one for $10,000, and one for $10,700, all dated of even date with the deed, May 31, 1928, and all due five years after date, payable to the order of W. L. Davenport, and containing the usual provisions found in such notes.

Plaintiffs allege the first note had been paid, but that the remaining two were in default.

February 4, 1932, Snyder conveyed the lands to A. J. Felton, subject to the notes and the vendor's lien.

The defendants L. E. and J. A. Mounger claimed an undivided one-half interest in the lands under the following contract:

"State of Texas,
"County of Live Oak.

"Whereas, the undersigned W. L. Davenport and L. E. Mounger heretofore made contract. for recovery of certain lands in Live Oak County in which it was agreed that Davenport should convey certain lands to said Mounger or his assigns, on which suit was to be instituted for the quieting

of title to same and after the termination of such suit or suits the said Mounger was to reconvey to said Davenport one-half interest in said lands so recovered or to which title was quieted, and,

"Whereas it is now agreed that such suits should be brought in the name of W. L. Davenport, it is now agreed and the said W. L. Davenport hereby binds himself, his heirs and assigns, to convey to said Mounger, his heirs and assigns, one-half of any lands so recovered or title thereto quieted as set out in said agreement between Mounger and Davenport herein referred to.

"The consideration for said transfer being service rendered and to be rendered by said Mounger, his heirs or assigns, or his attorneys, in the institution and prosecution of said suits relating to said lands.

"(Signed) W. L. Davenport
"Witness:
"(Signed) J. B. Sneed
"(Signed) Roy C. Ledbetter."

J. A. Mounger, a brother of L. E. Mounger, claimed the one-half interest as assignee of L. E. Mounger by virtue of the following assignment:

"San Antonio, Texas,
"Jan. 2, 1928

"I, L. E. Mounger, for and in consideration of $1.00 and other good and valuable considerations, in hand paid, do here assign and transfer all my interest in Davenport ranch in Live Oak County, Texas, about 15 miles West of George West, Texas, to J. A. Mounger being half interest in land held for me by W. L. Davenport and to be conveyed to me by him.

"(Signed) L. E. Mounger."

Charles Rattan, attorney for the Moungers, claimed a one-fourth interest by virtue of an assignment from the Moungers to him in payment of his fee.

The suit to clear title, as mentioned in the contract between W. L. Davenport and L. E. Mounger, was brought and tried in the District Court of Live Oak County, Texas, and a judgment rendered in that cause on the 28th day of December, 1927. The purpose of the suit was to perfect title under the statutes of limitation to some two hundred tracts or lots of ten acres each, as subdivided by a Dr. Simmons, which lots had been sold by Dr. Simmons to many different owners. These small tracts were in the pasture of W. L. Davenport and occupied and used by him in connection with the operation of his ranch on other lands owned by him.

Snyder and the Feltons claimed payments and credits on the notes sued on by the plaintiffs other than those credits admitted by the plaintiffs. The questions arising on these matters were submitted to the jury and determined by the jury, as will hereinafter be noted.

The plaintiffs, by proper pleading, alleged that the contract claimed by L. E. Mounger had never been executed; that if it had, Mounger had never performed his part of it, and therefore had acquired no interest in the land; but if they were mistaken in that, then he had been paid various sums of money, as will be shown hereinafter in this opinion, in lieu of any interest he might have been entitled to in the lands; that he was present and knew of the sale of the land by W. L. Davenport and others to Snyder, and had never, prior to the filing of his answer in this suit, asserted any claim to an interest in the lands nor to the cash proceeds, nor the vendor's lien notes.

It is rather difficult to understand and gather from the pleadings and the evidence the relations existing between the defendants in this suit. Roy C. Ledbetter, the attorney who brought the suit to clear the title to the Live Oak County lands, and J. B. Sneed witnessed the contract between Davenport and Mounger. Snyder, to whom the Davenports conveyed the lands, is the father-in-law of Tom Poynor, who testified he furnished the money for the cash payment, and that Snyder took the land in trust for him. A. J. Felton, to whom Snyder conveyed, subject to the lien, was a lifelong friend of Poynor, according to Poynor's testimony, and Poynor had dealt with him since he was sixteen years of age, and that Felton died in Poynor's house, in a room Felton called his own. Poynor made all the subsequent payments after Felton took the deed. L. E. Mounger testified he was interested in the suit that he might sell the lands through Tom Poynor and Jack Felton to Snyder and others. Ledbetter testified he did not know the relations existing between the several interested parties. L. E. Mounger was on several occasions, as detailed in the testimony, delivering payments on the written authority W. L. Davenport gave him, hereinafter copied,

to Davenport and by letter and conversation assured Davenport· and his attorneys they would be paid, using such expressions as "Well, the notes will be paid—, you don't have to worry, they will be paid." And again, "Well, that's all right, they may be a little bit slow, but they will be paid, you men will get your money." And on January 29, 1933, he wrote Mr. Davenport: "Dear Mr. Davenport:

"I am glad to report to you that I have closed the deal on the notes for $18,000 cash as agreed. It is only a matter of detail to finish the matter. Anything you may want to know, come to see me. With best wishes, I am,"

And again on July 30, 1933, he wrote Mr. W. S. Ethridge, attorney for Davenport, as follows:

"Yours recent date. I sent letter to proper parties & feel quite sure satisfactory payment will be made in near future. Re-Davenport Matter."

It is apparent all these defendants worked together and had a common interest.

The title of the Feltons and Snyder is subject to the vendor's lien retained to secure the unpaid purchase money and they cannot prevail here unless they establish some reversible error committed on the trial.

Felton's first assignment of error is to the action of the court in admitting in evidence note No. 2, over objection, because it shows on its face that it had been endorsed and delivered to the First State Bank of Three Rivers, and that plaintiffs were not the owners thereof.

 This assignment cannot be sustained. During the life of W. L. Davenport, the attorneys representing him, who were the attorneys for the plaintiffs here, got the note from the bank to sue on and brought this suit. The payments made on the note while in the possession of the bank were credited to W. L. Davenport. This is the uncontradicted testimony of the cashier of the bank. There are certain presumptions indulged in favor of commercial paper, such as when the plaintiff produces paper payable to him, he ·is presumed to be the owner. The production in court of an instrument sued on is prima facie evidence of ownership, although it bears his endorsement. If nothing more than the endorsement appears, the presumption is that it was transferred for collection only. 6 Tex.Jur., par. 298, p. 983, and. cases there cited. The evidence here demonstrates that to be the purpose of the transfer to the Bank. Assignments two, four, five and nine and the propositions asserted thereunder by the Feltons depend upon the ownership of the notes, and are disposed of under the first proposition, and are overruled.

 The Feltons further complain by assignment No. 3 and the propositions thereunder of the action of the court in overruling their special exception to a paragraph descriptive of note No. 3, wherein it is alleged to be substantially the same as note No. 2, and by assignment No. 10 and their propositions thereunder complain of the action of the court in overruling their motion to continue the case; and in assignment No. 11 and propositions thereunder complain of the action of the court in sustaining plaintiffs' special exception to paragraph VI of their answer. The record fails to disclose any action of the court on these exceptions, or that they were called to the court's attention, and, if well taken, were therefore waived, and cannot be availed of here. Epting v. Nees, Tex.Civ. App., 25 S.W.2d 717; Lerer v. Raines, Tex.Civ.App., 27 S.W.2d 621.

 The motion to continue was addressed to the discretion of the court, and we think there was no error in overruling it.

 Assignments five, six and seven and the propositions thereunder of the Feltons complain of the action of the court in submitting special issues one, two and three, because the evidence was uncontroverted thereon. These issues required the jury to find that certain payments made were made on notes two and three. The pleadings and the proof raised these issues of fact and they were properly submitted, and therefore no error committed.

The Moungers and Charles E. Rattan, who claims under the Moungers, assign as error the action of the court in overruling their motion for an instructed verdict, in submitting the several special issues to the jury, and in refusing their motion for judgment notwithstanding the verdict, and in several propositions challenge the action of the court in these matters complained of. They all relate to one proposition,

however, that the undisputed evidence shows Mounger had his contract with W. L. Davenport, that he performed it, and was entitled to his interest in the lands; or, in the alternative, to one-half of the proceeds of the sale thereof.

Under the record in this case these propositions cannot be sustained. Under the terms of the contract L. E. Mounger's right to an interest in the land was made dependent upon his performance of the obligations laid upon him by the terms of the contract.

One who claims under a contract has the burden to show his performance of it. To show the mere making of the contract is not sufficient. These propositions are too elementary to require the citation of authority.

On the performance of the contract L. E. Mounger testified that he did "some things in pursuance of the contract"; that he located the small tracts of land lying in the Davenport pasture; that he arranged to bring the suit; that he employed Roy C. Ledbetter to bring the suit and paid him his fee and all expenses. That, in substance, is his testimony with respect to his activities in the litigation to clear the title to the land, as detailed by him in his direct testimony. Mr. Ledbetter testified that he became connected with the suit through Poynor, Snyder and Sneed. He testified he was employed "in person by J. B. Sneed." His testimony with respect to L. E. Mounger's activities is as follows: "I am not sure that I know his exact connection in all of his relations. I do know, however, that he was active in behalf of the plaintiff in such suit, and had procured in some instances deeds and other instruments in curing the title; talked with me on several different occasions, was usually present at the time of the preparation of the case, which was being done in San Antonio and George West, and on more than one occasion I rode with him in his automobile from San Antonio to George West and back. Others interested on the plaintiffs' side of the suit· were J. B. Sneed, of Dallas, D. W. Snyder, of San Antonio, Tom Poynor, of Fort Worth. I first heard of the matter through J. B. Sneed, and my work was most closely connected with him. I did see D. W. Snyder and L. E. Mounger often in connection with the prosecution of the suit, and saw

Tom Poynor on more than one occasion. I do not know whose money paid the court cost, but usually any attorneys' fees and any costs and expenses are advanced or paid through J. B. Sneed. As stated above, such expenses were advanced to me by J. B. Sneed, or he reimbursed me after the expenses were incurred."

Of course, death has sealed the lips of W. L. Davenport, and the jury had only such facts and circumstances as were brought to them. We think the pleadings and the evidence sufficient to raise the issue. The court submitted this question in special issue number five, as follows: "Do you find from a preponderance of the evidence that L. E. Mounger performed the services, if any, provided for in said contract, if any, with W. L. Davenport? Answer 'Yes' or 'No.'" The jury answered: "No."

These defendants are, therefore, precluded on that issue.

As hereinbefore stated, the plaintiffs by proper pleading alleged that if the contract was made and performed, Mounger, nevertheless, was not entitled to recover, because he had accepted various sums of money in lieu of his interest in the lands. The court submitted this phase of the case in special issues six and seven, as follows:

6. "Do you find from a preponderance of the evidence that L. E. Mounger received from W. L. Davenport commissions, if any, for his services in connection with the sale of the land of W. L. Davenport, et al, to D. W. Snyder? Answer 'Yes' or 'No.'" The answer was: "Yes."

7. "Do you find from a preponderance of the evidence that the said L. E. Mounger accepted the commissions, if any, so paid to him by W. L. Davenport in full satisfaction of any interest said L. E. Mounger may have had in the land conveyed to Snyder by Davenport? Answer 'Yes' or 'No.'" The answer was: "Yes."

The findings of the jury were effective as against the claim of Moungers and Rattan, if the evidence is sufficient to sustain the findings.

On June 14, 1928, following the conveyance of the·lands by the Davenports to Snyder, on May 31, 1928, L. E. Mounger delivered to W. L. Davenport a receipt for $1360.00, which recited: "Said amount being due and owing me on the sale of his

lands in Live Oak County to D. W. Snyder." On January 28, 1933, L. E. Mounger took the following authorization from W. L. Davenport:

"San Antonio, Texas,
"Jan. 28/1933.
"L. E. Mounger,
"San Antonio, Texas.
"Dear Sir:

"I will take $18,000.00 Dollars cash and pay you 5% five per cent commission on this amount or any amount above the $18,-000.00 for the $20,700.00 notes that I hold against the land in Live Oak County, signed by Tom Poynor, or others. This applies to place known as W. L. Davenport Place containing 3000 or more acres of land in Live Oak County, Texas.

"(Signed) W. L. Davenport."

There is evidence that a similar authority had been previously given, and L. E. Mounger, on April 8, 1933, receipted W. L. Davenport for $300, which receipt recited:

"To apply on contract on reverse side of this paper. If balance of $17,700.00 is not paid by May 1st, 1933, it is understood and agreed said $300.00 is forfeited."
"Witnesses:
"(Signed) Jack Felton
"(Signed) J. M. Davenport."

L. E. Mounger likewise received another receipt for $1500 from W. L. Davenport dated April 29, 1933, which recited: "to apply on purchase price of $18,000.00 for notes held against property in Live Oak County, Texas. It being understood and agreed that you are to pay me or Jay Davenport $7000.00 Seven thousand dollars June 1st, 1933 and the balance of $18,000.00 less $300.00 and $1500.00 and the $7000.00 July 1st, 1933. This is an extension of an agreement of Apl. 8th, 1933."

Mounger received a check on the Three Rivers Bank for $300 May 11, 1933. He receipted W. L. Davenport for another $300 on January 29, 1933. He wrote W. L. Davenport as follows:

"Jan. 29/33
"* * *
"Dear Mr. Davenport:
"I am glad to report to you that I have closed the deal on the notes for $18,000 cash as agreed. It is only a matter of detail to finish the matter. Anything you may want to know, come to see me. With best wishes, I am,
"Your friend,"

July 30, 1933, he wrote W. S. Ethridge, attorney for W. L. Davenport, as follows:
"Dear Sir:
"Yours recent date. I sent letter to proper parties & feel quite sure satisfactory payment will be made in near future. Re– Davenport Matter."

L. E. Mounger testified, as set out heretofore, that he was interested in the law suit in order to make the sale to Snyder, Felton, Poynor and others. He testified that he knew of the sale of the lands, the amount of the cash payment and the notes taken for the balance of the purchase price. He further testified, on cross-examination: "I remember that I had a draft there that I endorsed and turned it over to Mr. Poynor, and he turned it over to you (Judge Brucks), but I don't remember the amount of the draft. The draft was to be applied as a credit on those vendor's lien notes."

Judge Brucks, one of the attorneys for plaintiffs, testified Mounger met him several times with the parties interested in the litigation, and at no time made any claim to the lands or the proceeds for himself or his brother, and quoted him as heretofore indicated. Judge Brucks related two or more other meetings and conversations, and he made no claims for himself or brother. These conversations occurred from 1933, when the first suit was filed during the lifetime of W. L. Davenport, down to December, 1937. Mounger was present and testified in the case, but never denied any of this. He does not say anywhere in any of his testimony that he ever asserted any claim against the Davenports at any time. James M. and George Davenport testified in this case that no claim or demand had at any time been made by either of the Moungers, and that their claim had never been heard of until the filing of their pleadings in this case. The original pleadings do not appear in the record, but the attorney for the Moungers testified that he prepared and filed an answer for L. E. Mounger on or about the 22nd day of December, 1937, and that he later discovered L. E. had assigned to J. A. Mounger, and he then amended and answered for the latter. J. A. Mounger did not testify in the case.

The long failure of the Moungers to make any claim to an interest in the land or the proceeds of the sale, coupled with the whole course of dealing, the documentary proof, and the statements made by

L. E. Mounger and the acceptance by him of the various sums of money, in the absence of showing as to what services the money was paid to him for, are sufficient to support the jury findings. The pleadings and the proof raised the issues and the record fully justifies the findings of the jury and the conclusion that the Moungers, the Feltons and Poynor were more interested in the retention of the record title to take advantage of some future speculative value of the land than paying for it and thereby acquiring the full title to it for its then present value.

Mounger was an interested party and the jury were not compelled to believe him on any issue, but had the right to disregard his testimony and reach their conclusions from the other facts and circumstances in the case. And well they might conclude he had some understanding and agreement with W. L. Davenport that he would sell the lands and take down cash rather than wait on a slow sale and still slower collections. All of his conduct is consistent with the finding.

We find no error, and the judgment is affirmed.