**J. B. SCHUBIGER, Appellant,**

v.

**FIRST NEWPORT REALTY INVESTORS, Appellee.**

No. 20195.

Count of Civil Appeals of Texas, Dallas.

April 24, 1980.

Rehearing Denied June 11, 1980.

---

Stephen B. Early, Longview, for appellant.

Mark W. Stevens, Winstead, McGuire, Sechrest & Trimble, Dallas, for appellee.

Before ROBERTSON, CARVER and HUMPHREYS, JJ.

HUMPHREYS, Justice.

J. B. Schubiger appeals from a judgment finding him liable on a guaranty. He argues that he is not liable as guarantor because of several variations between the guaranty and the subsequently executed note, that he was released from liability by the acts of First Newport Realty Investors, the appellee, and that he did not intend the guaranty to apply to the $164,000 note sued on. He also attacks the admission of certain evidence. We affirm.

In 1973, Schubiger and several others executed a guaranty to First Newport Realty Investors (then Alison Mortgage Investment Trust), guaranteeing payment of a promissory note by Alpha IV, Inc., in an amount not to exceed $1,050,000. The guaranty had an attachment, which was Exhibit A, a legal description of 2.550 acres of land in Dallas County. Subsequently, Alpha IV, Inc., through its president, Cecil Owens, executed a promissory note for $1,050,000 payable to First Newport. It also executed a deed of trust upon the 2.550 acre tract of land, which was given as security for the note.

Around 1975 Alpha IV fell into financial difficulty and the $1,050,000 note was refinanced. Another lender, First City Mortgage Company, advanced $1,005,000 to Linle Corporation, a corporation related to First Newport, and Linle Corporation purchased the 2.550 acres. As a condition to the loan, First City required First Newport to subordinate the original 1973 deed of trust lien on the property to a 1975 deed of trust lien in favor of First City. At the time of the sale, the balance of the note plus accrued interest was approximately $1,225,000. After First Newport received the $1,005,000 from Linle, a balance of $220,000 remained on the note. Because First Newport was still owed some money,

Alpha IV, through its president, executed a renewal and extension note of $164,000 to First Newport, secured by the 1973 lien on 2.550 acres, even though Alpha IV no longer owned the land. This was made possible by Linle Corporation endorsing the note and agreeing that the note would continue to be secured by the 1973 deed of trust. In 1977, the $164,000 note came into default and First Newport brought Suit on the guaranty. The court granted an instructed verdict for First Newport.

■ Schubiger first argues that the judgment is in error because the guaranty contains variations from the $1,050,000 note in several respects. He argues that these variations show that Schubiger's offer of guaranty was specific and was never accepted because the note was not within the terms of the guaranty. He contends that there are variances in that the note states that the interest rate may change without notice to the guarantor, and that the note contains a provision for a late charge, while the guaranty does not.

We disagree that these are variances because the guaranty here also provides that:

3. Guarantor agrees that the liability of the guarantor hereunder, shall not be in anywise released, diminished, impaired, reduced, or affected by

. . . . .

(e) Any other action permitted under the terms of the note.

Therefore, the guaranty by its provisions covers any action permitted by the terms of the note.

Schubiger further argues in his first point of error that a variance exists because the $1,050,000 note states that it is "secured primarily" by the deed of trust on the 2.550 acres, while the guaranty states that liability of guarantor shall not be affected by the taking or subordination of "any other security." In his argument under the point, however, he contends that these provisions show that he was looking to the real estate as primary security for the loan, and therefore, his offer of guaranty was specific, and had to be accepted specifically. If he is arguing that these provisions in the guaranty and note reveal a variance, we cannot agree. The provision in the note that it is "secured primarily" by the lien on the land does not conflict with the provision in the guaranty concerning the guarantor's liability if "any other security" is subordinated. The two provisions concern different matters. If Schubiger is arguing that these provisions reveal that he was relying on the real estate as primary security for the loan and that he therefore cannot be liable on this guaranty, we again disagree. This latter argument is answered in our discussion of Schubiger's second point of error.

In Schubiger's last argument concerning variance, he refers to the exhibit to the guaranty which contains a description of the 2.550 acre tract. He again contends that this reveals that he was looking to the real estate as primary security for the loan. He does not appear to be arguing that any variance exists here, but only that he had a right to rely on the real estate as security for the loan. Once again, we conclude that this contention does not affect Schubiger's liability under the guaranty for the reasons contained in our following discussion.

■ Schubiger's second point is that he was released and discharged by several acts of appellee. These acts include the conveyance of the 2.550 acre tract to Linle Corporation without Schubiger's consent and the subordination of the first lien to a lien of First City Mortgage Company without his consent. He also complains that he was not given notice of these acts.

Evidently, the proceeds of the sale to Linle Corporation were applied to the amount of the indebtedness. Furthermore, Schubiger is liable under Provision Four of the Guaranty which states as follows:

4. Guarantor [Schubiger] hereby unconditionally and absolutely guarantees the payment of all of said indebtedness, regardless of any act or omission of Trust [First Newport] or any party with reference to any of said indebtedness or any security or rights existing or to exist in connection therewith; and Guarantor agrees that Trust shall in no way be

obligated to bring or prosecute any action against Maker [Alpha IV] of said indebtedness or make any demand on Maker or give any notice of any kind to any party. Trust shall not be liable or accountable in any respect, nor shall Guarantor have a right of recourse against Trust by reason of, any act or omission on the part of Trust in connection with any of the matters herein mentioned.

The subordination of the lien and the transfer of the property clearly come within this provision. To support his argument that he is released, Schubiger relies on *Webb v. Finger Contract Supply Co.*, 447 S.W.2d 906 (Tex.1969), which holds that a clause in a guaranty allowing *modification* of security did not extend to *subordination* of that security. The guaranty in that case, however, did not contain the broad language in the provision quoted above. *See Estates v. Continental Bank & Trust Co.*, 421 S.W.2d 158, 161 (Tex.Civ.App.—Dallas 1967, no writ).

In connection with his argument that he was released due to the subordination of the security, Schubiger argues that nowhere in the guaranty is the appellee specifically given the right to subordinate the lien on the 2.550 acre tract of land. He argues that subordination of the 2.550 acres is not provided for because of the language of the guaranty that guarantor's liability shall not be released or affected by "Any subordination . . . of *any other* security . . ." [Emphasis added.] Thus, he contends that his liability on the guaranty *will* be released by subordination of the 2.550 acres, the land described in the exhibit attached to the guaranty. We disagree. We do not know why the language "any other security" was used. Schubiger is still liable, however, under Provision 4, his unconditional guaranty of the indebtedness, regardless of any act by appellee.

■ In Schubiger's third point he argues that he never intended that the 1973 guaranty would extend to the 1975 note for $164,000. He points to testimony that he told the board of directors in 1975 that he would not accept personal liability on the $164,000 note, that his attorney told him that same day that the guaranty would not cover the note, that he did not ratify the guaranty that day, and that he refused to ratify the guaranty after the lien was subordinated. Schubiger guaranteed payment of the original $1,050,000 note, and "all sums owing and to be owing upon any and all renewals, extensions, modifications and consolidations of said note, and all instruments had and to be had in connection therewith." The fact that he later determined he did not wish to be liable on a renewal and extension note cannot change his unconditional guaranty. If the contract is clear and definite, the parties' intent in entering into an agreement is to be determined from the agreement itself. *City of Pinehurst v. Spooner Addition Co.*, 432 S.W.2d 515, 518 (Tex.1968); *Southwest Savings Association v. Dunagan*, 392 S.W.2d 761, 767 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.). Schubiger does not contend, nor did he plead, that the guaranty is ambiguous, and we find it clear and definite. Thus, his subsequent acts and statements cannot be considered.

■ Schubiger's concluding arguments all concern the admission of certain evidence. He argues that the testimony of James H. Wallenstein, who drew the guaranty, was inadmissible because he was never shown to be appellee's attorney or to have the authority to represent appellee. We disagree. Wallenstein testified that appellee was his client and that he handled the transactions involving Alpha IV for appellee. Schubiger also attacks the admission of the $1,050,000 note and the $164,000 note on the grounds that the $1,050,000 note is not relevant because of the variances between it and the guaranty, that the $164,000 note is not relevant because it was not within the contemplation of the parties to the guaranty, that a proper predicate was not laid for the admission of either note, that the owner and holder were not shown to be appellee, and that no link between the notes and appellee was shown to exist. We have already held that there was no variance between the $1,050,000 note

and the guaranty and that both notes are covered by the guaranty. Schubiger's point of error that a proper predicate was not laid for the notes is not specific enough to apprise us of his exact complaint, and Schubiger provided us with no argument concerning the point. His objection to the admission of the $1,050,000 note at trial was also only that no proper predicate had been laid for the note. We therefore do not consider the point. *See Missouri-Kansas-Texas Railroad v. McFerrin*, 156 Tex. 69, 291 S.W.2d 931, 941 (1956); *Phagan v. State*, 510 S.W.2d 655, 659 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n. r. e.). We overrule his argument that the ownership of the note was not shown because the party offering the note is presumed to be the owner, especially if it is listed as payee, unless the contrary is shown. *Felton v. Davenport*, 148 S.W.2d 988, 991 (Tex.Civ. App.—El Paso 1941, writ dism'd judgmt. cor.). Here the payee was Alison Mortgage Investment Trust, which was shown to be the same business as First Newport. In connection with the $164,000 note, Schubiger argues that its admission was error because no evidence was produced of the value of the security that was subordinated. This contention is based on his argument that he was released by the subordination of the lien on the security, and that evidence should have been adduced at trial to show the value of the security, or the amount he was released. As we have already held that Schubiger was not released, we overrule the point.

Affirmed.