11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Jorge Escalante

Appellant

Vs.                   No.
11-01-00014-CV B Appeal from Dallas County

D. D. Luckie and Harry K.
Myers, Jr.

Appellees

 

Jorge
Escalante is the holder of two promissory notes by American Teletronics, Inc.
(ATI) to MainBank and a third promissory note by Bent Tree Group, Inc. (Bent
Tree) to MainBank.  Escalante had
pledged certificates of deposit to MainBank as additional security to
facilitate the loans from MainBank to ATI and Bent Tree.  ATI and Bent Tree failed to pay the notes,
and MainBank forced Escalante to liquidate his pledged CDs and pay the proceeds
to MainBank.  MainBank endorsed all
three notes to Escalante.  Escalante
sued ATI and Bent Tree, as makers, and four individuals, John N. Stogner, Dal
McKinney, D. D. Luckie, and Harry K. Myers, Jr., as guarantors.  After a bench trial, the trial court entered
a default judgment against ATI, Bent Tree, and McKinney;  entered an agreed judgment against Stogner;
and entered a judgment in favor of Luckie and Myers.  Luckie and Myers presented no evidence during the trial.  We affirm in part, reverse and render in
part, and reverse and remand in part.








Escalante
asserts that there is no evidence to support the trial court=s judgment or, in the alternative, that the
trial court=s judgment is against the great weight and
preponderance of the evidence.  Escalante
argues that the trial court erred because: (1) the guarantees and the
underlying notes were admitted into evidence; (2) Escalante proved that he is
the owner and holder of the guarantees of the August 24, 1998, note (Note 2)
executed by Myers and Luckie; (3) Escalante proved that the $274,511.06 CD
dated August 20, 1997, was the subject of the Luckie and Myers guarantees and
that the CD was lost or forfeited; (4) Escalante proved the amount of money
advanced on the line of credit note and the amounts due under the three notes;
and (5) Escalante proved that he was obligated to MainBank for payment of the
$150,000.00 note (Note 3).

Standard
of Review

The trial
court expressly found that Escalante failed to prove certain elements of his
claims against Luckie and Myers.  An
appellate court liberally construes the issues on appeal in order to obtain a
just, fair, and equitable adjudication of the rights of the litigants.  We look not only at the wording of the
issues but also to the argument under each point to determine the intent of the
party.  Holley v. Watts, 629 S.W.2d 694,
696 (Tex.1982).  Although his issues on
appeal are not stated in terms of legal and factual sufficiency challenges, we
find that Escalante has raised both legal and factual insufficiency points.

When an
appellant attacks the legal sufficiency of an adverse finding on an issue on
which it has the burden of proof, appellant must demonstrate on appeal that the
evidence establishes, as a matter of law, all vital facts in support of the
issue.  Dow Chemical Company v. Francis,
46 S.W.3d 237, 241 (Tex.2001).  When a
party attacks the factual sufficiency of an adverse finding on an issue on
which it has the burden of proof, the party must demonstrate on appeal that the
adverse finding is against the great weight and preponderance of the
evidence.  Id. at 242.  Because he had the burden of proof at trial,
Escalante must demonstrate on appeal either: 
(1) that he established each element as a matter of law or (2) that the
trial court=s finding as to the failure of proof of the
element was against the great weight and preponderance of the evidence.  Williford Energy Company v. Submergible
Cable Services, Inc., 895 S.W.2d 379, 383-84 (Tex.App. B Amarillo 1994, no writ).

Note 1
- $500,000.00 Revolving Line of Credit

Myers, as
chairman, and Luckie, as secretary, on behalf of ATI executed Note 1 to
MainBank.   Note 1 was dated August 20,
1997, and was a $500,000.00 revolving line of credit.  On its face, Note 1 stated that it was a renewal of a prior
note.  The first paragraph of the note
reads:

For value received, I promise to pay you, or
your order, at your address listed above the PRINCIPAL sum of FIVE HUNDRED
THOUSAND AND NO/100 Dollars $500,000.

 








Note 1 reflects that ATI
received $79,300.00 as the first advance on August 20, 1997.  It was a demand note.  If no demand was made, then interest was
payable quarterly, and the principal was due August 20, 1998.

Luckie was
not only acting on behalf of ATI as its secretary; he also executed some of the
documents on behalf of Escalante as Escalante=s attorney-in-fact.  Escalante
testified that he and Luckie had known each other for 30 years and that they
had been involved in numerous business transactions with each other.  On August 20, 1997, Luckie, as Escalante=s attorney-in-fact, pledged Escalante=s $274,511.06 CD No. 10038570 to MainBank as
security for Note 1 and Aall extensions, renewals, modifications and substitutions.@  The
record contains both the assignment by Escalante of the CD to MainBank and the
separate endorsement on the CD that states that the CD was Abeing held at MainBank as collateral on loan
in name of American Teletronics Inc.@  Myers and Luckie both
testified that Escalante pledged his CD to secure Note 1.

Escalante
also introduced into evidence guarantee agreements dated August 14, 1995, that
were executed by Myers and Luckie.  The
first paragraph of the guarantee agreements states that:

The
Undersigned, [Luckie][Myers], a shareholder of American Teletronics, Inc.,
hereby unconditionally guarantees payment and performance of all obligations of
American Teletronics, Inc. to Jorge A. Escalante arising under or related to
the Collateral Accommodation Agreement, attached hereto (the ACA Agreement@) and the Undersigned unconditionally agrees to indemnify and hold
harmless Escalante from any and all claims, actions, or causes of action,
losses or expenses that he may suffer or incur because or by reason of his
pledge of his $250,000 certificate of deposit to MainBank to secure the payment
and performance of the obligations of American Teletronics, Inc.=s to MainBank under a letter of credit issued
to Continental Casualty Company and/or Transportation Insurance Company and/or
Transcontinental Technical Services, Inc.; provided, however, the
liability of the Undersigned is limited to [10 percent in the case of Luckie
and 30 percent in the case of Myers] of the total liability of American
Teletronics, Inc., to Escalante. 
(Emphasis in original)

 








The
Collateral Accommodation Agreement (the CAA), also dated August 14, 1995,
between ATI and Escalante sets forth why Escalante pledged his $250,000.00 CD
to MainBank.  ATI wanted to have the use
of $420,000.00 of its $2,100,000.00 worker=s compensation insurance deposit with Continental Casualty Company
(Continental).  Continental required a
one-year letter of credit from MainBank to make certain that the $420,000.00
was repaid.  ATI did not have sufficient
unencumbered assets acceptable to MainBank to adequately collateralize ATI=s $420,000.00 liability to MainBank that
would arise out of MainBank=s issuance of the letter of credit to Continental.  Escalante agreed to pledge his $250,000.00
CD to secure ATI=s liability to MainBank to induce MainBank to
issue its letter of credit to Continental. 
In the CAA, ATI agreed that it would Aimmediately pay MainBank any amounts MainBank pays under [the letter of
credit to Continental].@

In its
findings of fact, the trial court found that Escalante is the current owner and
holder of Note 1; that Escalante paid MainBank $274,511.06 for Note 1 and used
the proceeds of a $274,511.06 CD No. 10038570 to do so; and that, under the
terms of an Individual Guaranty, Indemnity, Stock Pledge and Security Agreement
dated August 14, 1995, Escalante pledged a $250,000.00 CD to secure the payment
and performance of the obligation of ATI to MainBank under the letter of credit
issued to Continental.  In its
conclusions of law, the trial court held in part:

1.                 
[Escalante]
failed to prove by a preponderance of the evidence that the $274,511.06 C.D.
dated August 20, 1997, was in any way related to the $250,000 C.D. dated August
14, 1995, and which was the subject matter of the Individual Guaranty,
Indemnity, Stock Pledge and Security Agreements executed by D. D. Luckie and
Harry K. Myers [on August 14, 1995].

 

2.                 
[Escalante]
failed to prove by a preponderance of the evidence that the $250,000 C.D.
identified in Exhibits 3 and 4 was lost or forfeited in connection with the
payment and performance of the obligations of [ATI] to Main Bank under the
Letter of Credit issued by [Continental].

 

5.         [Escalante] failed to
prove by a preponderance of the evidence the amount of money advanced on the
Line of Credit Note (Note 1).

 

6.         [Escalante] failed to
prove by a preponderance of the evidence the amount of principal and interest
owed by [ATI] on Note 1.

 








An
assignee of a note seeking to recover for the breach of a guarantee agreement
regarding a note must establish: (1) the existence and ownership of the
guarantee agreement; (2) the terms of the underlying contract by the holder;
(3) the occurrence of the conditions upon which liability is based; and (4) the
failure or refusal to perform the promise by the guarantor.  Marshall v. Ford Motor Company, 878 S.W.2d
629, 631 (Tex.App. B
Dallas 1994, no writ); Wiman v. Tomaszewicz, 877 S.W.2d 1, 8 (Tex.App. B Dallas 1994, no writ).

Escalante
established his ownership of the 1995 guarantee agreements from Luckie and
Myers.  The existence and ownership of a
note may be established by proof that the plaintiff is the named payee, that
plaintiff had possession of the note and produced it in court, and that the
court admitted it into evidence.  See
Schubiger v. First Newport Realty Investors, 601 S.W.2d 218, 222 (Tex.Civ.App. B Dallas 1980, writ ref=d n.r.e.). 
We hold that the same is true in proving ownership of a guarantee.  Luckie and Myers introduced no evidence.

In their
1995 individual guarantee and indemnity agreements, Luckie and Myers agreed to
indemnify and hold harmless Escalante: 

[F]rom any and all claims, actions, or causes
of action, losses or expenses that he may suffer or incur because or by reason
of his pledge of his $250,000 certificate of deposit to MainBank to secure the
payment and performance of the obligations of American Teletronics=s, Inc. to MainBank under a letter of credit issued
to Continental Casualty Company.

 

The question is whether
Escalante established that the conditions referred to did occur and,
therefore,  Luckie and Myers became
liable to Escalante under their 1995 guarantee agreements.

At trial,
Escalante testified that Luckie delivered his 1995 individual guarantee and
indemnity agreement to Escalante and that this document was provided or
delivered to Escalante in connection with his pledge of the $274,511.06 CD
dated August 20, 1997.  Escalante
testified that ATI failed to pay the 1997 Note 1 to MainBank; that MainBank
required him to cash his $274,511.06 CD to pay MainBank $223,177.70, the amount
of principal that was due MainBank on November 23, 1998;[1]
and that, for paying the principal and interest due on November 23, 1998,
MainBank endorsed Note 1 to Escalante. 
When Escalante testified that Luckie owed him $24,811.08 under his 1995
guarantee and that Myers owed him $74,433.23 under his 1995 guarantee, it was
apparent that Escalante was basing his calculations on his assumption that
MainBank=s forcing him to cash his 1997 CD to pay
$223,177.70 was the occurrence of the condition in the 1995 guarantee agreements
of Luckie and Myers that he suffer a loss by reason of his pledge of his
$250,000.00.  








The only
evidence that the 1995 guarantee agreements were related to the pledge of the
1997 CD was Escalante=s
brief statement that Luckie delivered his 1995 guarantee agreement in
connection with Escalante=s pledge of his 1997 CD. 
Escalante provided no proof that his CD pledged in 1995 was related to
the pledge of his 1997 CD.  There is no
evidence that the line of credit for 
$500,000.00 in Note 1 was related to ATI=s obligation to MainBank for $420,000.00 in 1995.  The fact that Note 1 recites that the first
advance under Note 1 was $79,300.00 indicates that Note 1 and the earlier
$420,000.00 obligation were not connected. 
From this fact alone, the trial court could infer that Note 1 and the
$420,000.00 obligation in 1995 were not connected.  

Even if CD
No. 10038570 was a renewal of the 1995 CD or was the same CD with accumulated
interest, Luckie and Myers limited their 1995 guarantee to Escalante=s pledge of a $250,000.00 CD to secure ATI=s obligation to MainBank in connection with
MainBank=s issuance of a letter of credit (the Main
LC) to Continental.  The 1995 guarantee
agreements of Luckie and Myers state that they were guaranteeing payment and
performance of all obligations of ATI to Escalante arising under or related to
the CAA.  The CAA provided specifically
that:

The term of Escalante=s pledge of his $250,000 C. D. shall expire
one year from the date of the Main LC (the ATerm@) and Escalante shall be entitled to receive
his $250,000 C. D. at the end of the Term. 
The $250,000 C. D. shall not secure any other obligations or
liabilities of ATI to MainBank. 
(Emphasis added)

 

Escalante provided no
evidence that his $274,511.06 CD secured ATI=s obligation to MainBank under the CAA. 

A
guarantor is entitled to have his agreement strictly construed, and it may not
be extended by construction or implication beyond the precise terms of his
contract.  McKnight v. Virginia Mirror
Company, 463 S.W.2d 428, 430 (Tex.1971). 
Escalante failed to provide evidence demonstrating that Luckie and Myers
breached the terms of their 1995 guarantee agreements.  

Note 2
- $175,790.00 Loan Amount








The
$175,790.00 note, dated August 24, 1998, was payable to MainBank.  Note 2 was also executed by Myers, as
chairman, and Luckie, as secretary, on behalf of ATI.  Myers and Luckie executed their guarantees of Note 2 to MainBank
on the same day.  Although it found that
Escalante was the owner and holder of Note 2, the trial court found that
Escalante did not prove that he was the owner and holder of Luckie=s guarantee of Note 2 or that he was the
owner and holder of Myers=s guarantee of Note 2.  The
trial court further concluded that Escalante failed to prove by a preponderance
of the evidence the amount of principal and interest due on Note 2 or that the
CD pledged to secure Escalante=s obligation to MainBank was foreclosed upon.  Note 2 provides that both interest and principal were payable on
demand; but, if the bank made no demand, then both interest and principal were
due December 30, 1998.  The trial court
found that Escalante made no demand on either Luckie or Myers. 

The
testimony of Escalante, Luckie, and Myers fully proved the execution of Note 2
and the guarantee agreements of Luckie and Myers.  Neither Luckie nor Myers denied under oath the execution of their
guarantee agreements or the execution of Note 2.  When a claim is based on the execution of a written instrument
and the defendant does not deny under oath the execution of the instrument, Athe instrument shall be received in evidence
as fully proved.@ TEX.R.CIV.P. 93(7); Hanks v. NCNB Texas
National Bank, 815 S.W.2d 763 (Tex.App. B Eastland 1991, no writ).

Texas
recognizes that there can be an implied transfer of a guarantee when the
promissory note is assigned.  Ray v.
Spencer, 208 S.W.2d 103 (Tex.Civ.App. B Texarkana 1947, writ ref=d); see Boyd v. Diversified Financial Systems, 1 S.W.3d 888 (Tex.App. B Dallas 1999, no pet=n); Vaughn v. DAP Financial Services, Inc.,
982 S.W.2d 1 (Tex.App. B Houston [1st Dist.] 1997, no pet=n).  Ray v. Spencer, supra, held
that there can be an implied assignment of a guarantee supported only by the
assignment of the promissory note. The court in Boyd v. Diversified Financial
Systems, supra, also found that there had been an implied assignment of the
guarantee with the promissory note.  The
Boyd court, however, first found that the loan sale agreement between
the Federal Deposit Insurance Corporation and Diversified Financial Systems
provided that the FDIC was selling Diversified all ALoans,@ and the agreement defined ALoans@ as including the rights of the FDIC under
collateral documents which included any personal guarantee.  Thus, the Boyd court held that there
had been an implied assignment; a formal assignment was not required.  There appears to have been no document
transferring the guarantee from the FDIC to DAP Financial Services, Inc., in Vaughn;
yet the court found that, based on a witness=s testimony, the guarantee was transferred. 








Under the
facts of this case, we find that there was an implied assignment of the
guarantee agreements to Escalante when MainBank endorsed Note 2 to
Escalante.  Luckie and Myers signed  guarantee agreements that contemplated
MainBank assigning Note 2.  Their
guarantees were absolute guarantees of payment, not of collection.  See Universal Metals and Machinery, Inc. v.
Bohart, 539 S.W.2d 874 (Tex.1976)(guarantor liable on his guarantee of payment
even though the maker=s
signature is a forgery); Ford v. Darwin, 767 S.W.2d 851 (Tex.App. B Dallas 1989, writ den=d).  
In their guarantee agreements, Luckie and Myers agreed:

For good
and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, and to induce MAINBANK N.A., RED OAK, TX. (herein, with its
participants, successors and assigns, called ALender@), at its option, at any time or from time to time to make loans or
extend other accomodations to or for the account of AMERICAN TELETRONICS INC.
(herein called ABorrower@) or to engage in any other transactions with Borrower, the Undersigned
hereby absolutely and unconditionally guarantees to Lender the full and prompt
payment when due, whether at maturity or earlier by reason of acceleration
or otherwise, of the debts, liabilities and obligations described as
follows:

 

A. [T]he Undersigned guarantees to Lender the
payment and performance of the debt, liability or obligation of Borrower to
Lender evidenced by or arising out of the following: $175,790.00 NOTE DAT (sic)
8/24/98 WITH ACCRUED INTEREST AT 6.80% and any extensions, renewals or
replacements thereof (hereinafter referred to as the AIndebtedness@). (Emphasis added)

 

The
endorsement by MainBank to Escalante of Note 2 Aspecifically grants to [him] the right and power to collect all monies
due.@  This
would include monies due to MainBank under the guarantees of Luckie and Myers,
and MainBank delivered the guarantees to Escalante when it endorsed Note
2.  

Myers
testified that ATI did not pay the amount due under Note 2 because A[i]t didn=t have the money@ and that he failed to pay anything under his guarantee of Note 2
because he didn=t have the money.  Myers further stated that there was no other reason why he failed
to pay anything under his guarantee. 
Luckie also testified that ATI had not repaid the $175,790.00, that Escalante
had pledged a CD to secure Note 2, and that Luckie had made no payment under
his guarantee of Note 2.  Luckie further
testified that he understood that MainBank had assigned Note 2 to Escalante. 








Luckie and
Escalante had been involved in various business transactions for over 30
years.  As mentioned earlier, Luckie
acted as Escalante=s
attorney-in-fact in pledging Escalante=s CD in connection with Note 1.        

According
to Escalante, ATI had advised him that it was not going to be able to pay the
$175,790.00 obligation to MainBank. 
Escalante testified that MainBank had endorsed Note 2 to him on November
23, 1998, and that, at the same time, he received possession of Luckie=s and Myers=s guarantees of Note 2. Escalante said that he had pledged CD No.
31041365 in the amount of $175,790.00 to secure Note 2.  Escalante testified that he had to cash CD
No. 31041365 to acquire Note 2 and that he paid MainBank $175,790.00 plus some
interest to acquire Note 2.  

Escalante
was not required to make demand of ATI before proceeding against Luckie and
Myers.  Universal Metals and Machinery,
Inc. v. Bohart, supra at 877-78.  The
guarantee agreements are comprehensive, and Paragraph No. 11 specifically
states that lender[2] did
not have to first resort to ATI for payment before enforcing the
guarantees.  Nor was Escalante required
to first make demand of Luckie and Myers on their guarantee.  Luckie and Myers were the officers of
ATI.  They testified that ATI did not
have the money to pay MainBank.  They
agreed in Paragraph No. 2 of their guarantee agreements that A[n]o act or thing need occur to establish the
liability of the Undersigned hereunder.@  No purpose would have been
served by Escalante making a formal demand on Luckie and Myers.  MainBank endorsed Note 2 to Escalante on
November 23, 1998.  Note 2 was a demand
note; and, even if no demand, interest and principal were absolutely due on
December 31, 1998.  Escalante filed this
suit February 22, 1999.








The
assignment of a note does not automatically assign an underlying guarantee in
every case.  For example, the court in
Ashcraft v. Lookadoo, 952 S.W.2d 907 (Tex.App. B Dallas 1997), pet=n den=d per curiam, 977 S.W.2d 562 (Tex.1998), discussed at
length why it found that there had been no implied assignment.  In examining the facts, the court noted that
the guarantee was not in the asset file with the note that was conveyed, that
the assignee did not possess the guarantee, that the assignee could not produce
the original guarantee, and that the assignee could not prove that the
defendant had ever signed the guarantee. 
The court pointed out that the copy of the guarantee was not specific to
the note in question, and the assignee produced no evidence that the transferor
of the note ever owned a valid guarantee capable of being assigned.  Thus, the appellate court found that those
facts supported the trial court=s finding that the assignee failed to prove that he was the owner of
the guarantee.

The court
in Cadle Company v. Regency Homes, Inc., 21 S.W.3d 670 (Tex.App. B Austin 2000, pet=n den=d), found that it was not necessary to imply a transfer of the
guarantee with the note because:

Cadle possessed and presented to the court
the original guaranty, which Rutland [the guarantor] acknowledged having
executed.  The language of the guaranty
specifically stated that it guaranteed all of Regency=s existing or future indebtedness to the bank
and was intended to benefit any assignee of the original bank.  Finally, the loan sale agreement
specifically conveyed to Cadle all collateral documents, which included personal
guaranties.

 

Escalante
conclusively established that he owned the guarantees of Luckie and Myers.  There was an implied assignment of their
guarantees with Note 2.  Ray v. Spencer,
supra.  The trial court also erred in
concluding that Escalante failed to prove by a preponderance of the evidence
the amount of principal and interest due on Note 2.  Escalante=s possession of Note 2, Luckie=s and Myers=s
acknowledgment that they executed Note 2 and their guarantees, Luckie=s and Myers=s testimony that ATI did not pay Note 2 and that they did not pay
anything pursuant to their guarantee agreements, and the fact that Note 2 was
not marked paid constituted proof that Note 2 remained unpaid. Cadle Company v.
Regency Homes, Inc., supra at 675. 
Payment is an affirmative defense. 
TEX.R.CIV.P. 94.  The burden was
on Luckie and Myers to plead and provide evidence that Note 2 had been paid in
whole or in part.  Neither Luckie nor
Myers raised the affirmative defense of payment, and they provided no evidence
that Note 2 had been paid.

Finally,
the trial court erred in concluding that Escalante failed to prove that
MainBank foreclosed on his CD. 
Escalante was not required to provide this proof.  The guarantee agreements of Luckie and Myers
guaranteed the payment of Note 2 to MainBank or its assignee.  Escalante could have been an unrelated
third-party purchaser of Note 2 and the guarantee agreements, and he would be
entitled to enforce the guarantee agreements.

Note 3 B $150,000.00 Loan Amount

Note 3 was
dated August 3, 1998, payable to MainBank. 
It was executed by Myers, as president, on behalf of Bent Tree Group,
Inc.  Note 3 was payable upon demand;
but, if the bank made no demand, then both interest and principal were due on
December 30, 1998. MainBank endorsed Note 3 to Escalante, and the trial court
found that Escalante owned Note 3.  In
its findings of facts, the trial court mistakenly stated that ATI executed Note
3.  Note 3 reflects that the maker was
Bent Tree Group, Inc., and Myers testified that the maker was Bent Tree Group,
Inc.  The trial court also found that
Escalante was the owner and holder of the Guaranty Agreements dated August 13,
1994, executed by Luckie and Myers. 
Despite finding that Escalante owned Note 3 and the guarantees, the
trial court then erroneously concluded that Escalante failed to prove by a
preponderance of the evidence:  that
Escalante was obligated to MainBank for payment of Note 3; the amount of
principal and interest due on Note 3; and that collateral pledged by Escalante
to secure Note 3 was foreclosed on.  The
trial court also found as a fact that Escalante did not make a demand for
payment on Luckie and Myers.

The
guarantee agreements of Luckie and Myers read:

In
consideration of the sum of One Dollar to me paid by Jorge A. Escalante
(hereinafter called the Collateral Provider), the receipt whereof is hereby
acknowledged, and further in consideration of the credit given and hereafter to
be given by MainBank B Red
Oak, Texas (hereinafter called MainBank) to Bent Tree Group, Inc. (hereinafter
called the Debtor), I hereby guarantee to the Collateral Provider, its
assignees and transferees, the payment at maturity of all promissory notes,
certificates of deposit, checks, drafts, acceptances, overdrafts and other
indebtedness of whatsoever nature upon or for which the Collateral Provider is
or may hereafter become obligated to MainBank, whether as maker, acceptor,
drawer, endorser, guarantor, surety or otherwise, and all notes or other
evidences of indebtedness or liability heretofore or hereafter purchased or acquired
from said Debtor by said MainBank and endorsed by said MainBank, with or
without recourse, whether said notes or other evidences of indebtedness or
liability so made or so incurred or so purchased and acquired be retained by
said MainBank or transferred before or after maturity, with or without
recourse.

 








I waive
notice of acceptance of this guaranty by the Collateral Provider as to present
and future obligations, indebtedness and liability of the Debtor to MainBank of
the character aforesaid; and I waive presentment, demand, protest,
notice of protest and notice of dishonor as to each and all items
constituting the indebtedness or obligation hereby guaranteed.  No renewal or extension of the time of
payment of any such item shall affect my liability hereunder, whether made
before or after written notice of revocation of this guarantee is given.
(Emphasis added)

 

In the third paragraph of their guarantee
agreement, Luckie and Myers further agreed:

 

I authorize the Collateral Provider to
forward any and all collateral which it may from time to time hold as security
for the indebtedness hereby guaranteed, to the Debtor for collection and
remittance or for credit.  I agree that
no exchange, release or surrender of any such collateral and no release or
discharge of any party liable thereon shall affect my liability on this
guaranty.

 

Myers
testified that Bent Tree was out of business and ceased operations in the
summer of 1999.  Myers also testified
that Bent Tree Group, Inc. did not pay sums due under Note 3 because it did not
have the money and that he failed to pay anything under his guarantee because
he did not have the money.  Myers
further stated that there was no other reason why he failed to pay Escalante
anything under his guarantee.  Escalante
testified that he pledged his CD No. 31041366 in the amount of $150,000.00 to
secure Note 3.  Escalante further
testified that he had to cash that CD to pay the bank; in addition to the
$150,000.00, he also had to pay some interest. 
Escalante confirmed Myers= testimony that $150,000.00 was still due under Note 3; he further
stated that through July 25, 2000, the interest due amounted to
$21,560.47.  The Guaranty Agreements
limited Luckie=s and Myers=s guarantees to $30,000.00 each. 
Escalante testified that, as of July 25, 2000, they each owed him
$30,000.00 plus $4,312.09 interest. 








Escalante=s possession of Note 3, Myers=s acknowledgment that he executed Note 3 as
president of Bent Tree, and the fact that Note 3 was not marked paid
constituted prima facie proof that Note 3 remained unpaid.  TEX. BUS. & COM. CODE ANN. ' 3.308 (Vernon Supp. 2002); Cadle Company v.
Regency Homes, Inc., supra at 675; Prudential Securities, Inc. v. Haugland, 973
S.W.2d 394, 399 (Tex.App. B El Paso 1998, pet=n den=d); Schlager v. Harris, 805 S.W.2d 893, 894
(Tex.App. B Corpus Christi 1991, no writ).  Myers and Escalante both testified that
nothing was paid on Note 3.  Myers
testified that the only reason that he did not pay Escalante under his
guarantee agreement was that he did not have the money.  It was the obligation of Luckie and Myers to
show repayment of Note 3; Escalante presented prima facie and actual proof that
Note 3 was unpaid.  Again, neither
Luckie nor Myers raised the affirmative defense of payment.  See Cadle Company v. Regency Homes, Inc.,
supra at 675.  The prima facie proof
that Note 3 was unpaid and the testimony of Myers and Escalante conclusively
established that Note 3 was unpaid.

Although
the trial court concluded that Escalante failed to show that he was obligated
to MainBank, the guarantee agreements themselves stated that Luckie and Myers
guaranteed to Escalante Athe payment at maturity of all promissory notes, certificates of deposit...upon
or for which [Escalante] is or may hereafter become obligated to MainBank.@ 
Escalante testified that he had to cash CD No. 31041366 to pay the
$150,000 to MainBank.  He sued Luckie
and Myers after December 30, 1998, the maturity date of Note 3.  Note 3 was Aacquired from said Debtor [Bent Tree] by said MainBank and endorsed by
said MainBank...without recourse@ to Escalante.  Escalante
introduced the testimony of Myers that the only reason that he did not pay
Escalante on his guarantee was that he did not have the money.  Luckie and Myers introduced no evidence to
the contrary.  Finally, there was no
requirement that Escalante make a demand on Luckie and Myers.  Both Luckie and Myers specifically waived
demand in their guarantee agreements. 

The trial
court did not err in granting judgment to Luckie and Myers on their 1995
guarantee agreements to Escalante because Escalante did not prove that they
breached their agreements in connection with Note 1.  The trial court erred in failing to grant Escalante judgment
against Luckie and Myers on their guarantees of Notes 2 and 3.  Under Paragraph 13 of their guarantee
agreements, Luckie and Myers were jointly and severally liable to Escalante for
the payment of Note 2.  They each owed
$30,000.00 under their guarantee agreements relating to Note 3.

Attorney=s Fees 

In his
final issue, Escalante asserts that the trial court erred in failing to award
him attorney=s fees under the provisions of Luckie=s and Myers=s guarantee agreements.  The
trial court concluded that Escalante was not entitled to attorney=s fees because he had not made a demand upon
or presented the claims to Luckie or Myers. 
See TEX. CIV. PRAC. & REM. CODE ANN. '' 38.001 & 38.002[3]
(Vernon 1997).  Escalante does not
contend on appeal that he presented the claims but, rather, that he was not
required to present the claims because presentment was waived by the guarantee
agreements.  








In Texas,
attorney=s fees are authorized only when provided for
by statute or by contract between the parties. 
Travelers Indemnity Company of Connecticut v. Mayfield, 923 S.W.2d 590,
593 (Tex.1996).  In his pleadings,
Escalante requested attorney=s fees pursuant to the Texas Civil Practice and Remedies Code and also
pursuant to the terms of the agreements. 
The guarantee agreements covering Notes 2 and 3 expressly provide for
the recovery of attorney=s fees and for the waiver of presentment.  The guarantee agreements signed by Luckie and Myers with respect
to Note 2 read in relevant part: 

I waive presentment, demand, protest, notice
of protest and notice of dishonor as to each and all items constituting the
indebtedness or obligation hereby guaranteed. 


 

                                                          *     *    
*

 

In case of default in the payment of any indebtedness or liability
guaranteed hereby, there shall be added to such indebtedness or liability, and
we will pay, all expenses, costs and attorneys fees incurred by the Collateral
Provider either in collecting or attempting to collect the same or any sums
payable hereunder.  

With respect to Note 3,
the guarantee agreements read in relevant part:

The
Undersigned [Luckie and Myers] will pay or reimburse [MainBank, its successors,
and assigns] for all costs and expenses (including reasonable attorneys= fees and legal expenses) incurred by
[MainBank, its successors, and assigns] in connection with the protection,
defense or enforcement of this guaranty in any litigation.  

 

                                                          *     *    
*

 

The Undersigned waives presentment, demand for payment, notice of
dishonor or nonpayment, and protest of any instrument evidencing
indebtedness.  

We hold
that, pursuant to the express terms of the guarantee agreements, Luckie and
Myers waived presentment and demand of Escalante=s claims against them and that they agreed to pay attorney=s fees. 
Therefore, the trial court erred in concluding that Escalante was not
entitled to attorney=s
fees.








Escalante=s counsel testified that Escalante had
incurred reasonable and necessary attorney=s fees of $19,547.50 through trial; that it would be impossible to
separate the work done on any specific note or claim asserted by Escalante
because the claims were interrelated; that Escalante would incur $1,000.00
additional attorney=s fees
if a motion for new trial were filed; that a reasonable and necessary attorney=s fee for an appeal to the Texas Court of
Appeals would be $3,500.00; that, if a petition is filed but not granted by the
Texas Supreme Court, a reasonable and necessary attorneys= fee would be $2,500.00; and that, if the
Texas Supreme Court grants the petition, a reasonable and necessary attorney=s fee would be $3,000.00.  Luckie and Myers did not challenge this
testimony nor did they introduce any evidence. 
In addition to this appeal, Escalante did file a motion for new
trial.  The trial court should determine
whether the attorney=s fees
were reasonable and necessary.

This
Court=s Ruling

We affirm
the trial court=s judgment that Luckie and Myers owe nothing
on their guarantee agreements dated August 14, 1995, because there was no
evidence that their guarantee agreements and Note 1 were related.  We reverse and render judgment that
Escalante recover the unpaid amount of $175,790.00 on Note 2 against Luckie and
Myers, jointly and severally, on their guarantees of Note 2.  We reverse and render judgment that
Escalante recover $30,000.00 from Luckie and $30,000.00 from Myers on their
guarantees of Note 3.  We reverse and
render judgment that Escalante is entitled to attorney=s fees. 
We reverse and remand for further proceedings pursuant to this opinion,
including the calculation of interest and the determination by the trial court
of the amount of reasonable and necessary attorney=s fees to which Escalante is entitled.

 

TERRY
McCALL

JUSTICE

May 9, 2002

Publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.











[1] Escalante
testified that he also had to pay interest on the $223,177.70 that was due on
November 23, 1998. 





[2] Lender is defined in the guarantee as being MainBank,
its successors, and assigns.





[3]Section 38.002 provides in part: ATo recover attorney=s
fees under this chapter...(2) the claimant must present the claim to the
opposing party or to a duly authorized agent of the opposing party.@